UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>SETH AIKENS,<br><br>Defendant. | Criminal No. 2:22-CR-119<br><br>Filed Electronically |

### CLIENT DIRECTED REPLY TO UNITED STATES OMNIBUS RESPONSE TO DEFENDANT'S PRETRIAL MOTIONS (ECF NO. 67)

And now, comes the Defendant, Seth Aikens, by and through Counsel, Frank C. Walker II, Esquire, and FrankWalkerLaw, and files this herein Client Directed Reply to the Government's Omnibus Response, and in support thereof, avers the following:

1. Seth Aikens ("Mr. Aikens" hereinafter) was named in a superseding indictment at the above captioned Criminal Number, with counts 1 through 17 for wire fraud, counts 18 through 24 for mail fraud, and counts 25 through 30 for money laundering.

2. Mr. Aikens has entered a plea of NOT GUILTY.

3. On March 5, 2025, the Government filed an Omnibus Response to Defendant's Pretrial Motions, wherein it specifically responded to all of Mr. Aikens' pretrial motions; accordingly, Mr. Aikens hereby replies as follows:

## IN RE: BILL OF PARTICULARS

The Government claims Mr. Aikens is conducting an "improper discovery fishing expedition" in filing his Bill of Particulars, and that the same said motion is proper only when "the charges of the indictment are so general that they do not adequately advise the defendant of the specific acts of which he is accused." [ECF No. 67, 7]

The purpose of the bill of particulars is to provide a defendant with the ability to obtain the information necessary for them to conduct their own investigation. *United States v. Smith*, 776 F.2d 1104, 1111 (3d Cir. 1985). The bill of particulars is "designed to limit the government's case"; further, there can be no variance between the notice given in a bill of particulars and the evidence at trial. *Id. Citing United States v. Neff*, 212 F.2d 297, 309 (3d Cir. 1954). Rule 7(f) authorizes the court to direct the Government to "furnish to the defendant" certain specified items of discovery. *Id.*

Here, Mr. Aikens' Motion for a Bill of Particulars was not an "improper discovery fishing expedition," but was instead proper in the foregoing case. The Government argues a bill of particulars is improper because the indictment is so specific that a bill of particulars is improper, and that there is no potential for surprise at trial due to furnished discovery. [ECF No. 67, 7-9] While Mr. Aikens concedes there has been much discovery furnished, the items sought in his Motion for a Bill of Particulars have not all been disclosed by the Government, nor disclosed via the indictment, and a failure to disclose such information would violate the purpose of the rules of discovery, and Mr. Aikens' constitutional rights to due process and procedural fairness.

For example, in the motion Mr. Aikens sought the methods used by the Government in preserving and protecting the files accessed and/or in Mr. Aikens'

possession. The indictment does not answer this question, regardless of its specificity, and no amount of investigation Mr. Aikens conducts will answer any such question; however, the answer is of key importance because it directly impacts whether the Government spoliated evidence, and to what degree spoliation occurred.

Moreover, there is substantial potential for surprise at trial if a bill of particulars is not furnished because although the Indictment is extensive, significant theories to be utilized by the defense are not only curtailed but extinguished due to a lack of proper foundational information which, if discovered at trial, will cause surprise and very likely an inability for the defense to adequately respond.

By GRANTING the Motion for Bill of particulars in this case, it prevents any surprise to Mr. Aikens, and it does not prejudice the government, other than requiring it to meet its obligations.

## IN RE: MOTION TO PRODUCE EVIDENCE THE GOVERNMENT INTENDS TO USE UNDER 404(b) AND 609

The Government claims it has uncovered "potentially admissible character evidence," although it has not decided as to whether it intends to introduce it. Although it understands its requirement to provide notice, because it has yet to decide on whether to introduce it, the Government refuses to identify what this character evidence may be. [ECF No. 67, 12-14]

Mr. Aikens contends that the Government has engaged in a pattern of selective non-disclosure regarding *Rule 404(b) Evidence*. This constitutes a particularly egregious discovery violation as the prosecution simultaneously seeks to introduce *404(b)* evidence while withholding material that directly negates the probative value of such evidence. Mr. Aikens believes and therefore avers that the *404(b)* evidence is inextricably intertwined

with exculpatory evidence, and for Mr. Aikens to be afforded his constitutional right of due process and procedural fairness, the Government must disclose this *404(b)* evidence so it may be examined.

### **CLIENT DIRECTED REPLY TO GOVERNMENT'S RESPONSE TO MOTION FOR A FRANKS HEARING**

The Government, in its Omnibus Response, responded to Mr. Aikens' Motion for a *Franks* Hearing. [ECF No. 67, 15] In its response, the Government asserts that Mr. Aikens fails to make the requisite substantial preliminary showing necessary to obtain a *Franks* Hearing. [ECF No. 67, 16] Mr. Aikens contends that this assertion is unsupported by the facts.

As this Court is aware, if a Defendant can make a substantial preliminary showing that the language in the affidavit was made with a reckless disregard for the truth, which includes material omissions and misstatements. *Franks v. Delaware*, 438 U.S. 154 (1978); *See United States v. Yusuf*, 461 F.3d 374 (3d Cir. 2006). The material omissions must be necessary to the finding of probable cause. *Id.*; *See also United States v. Aviles*, 938 F.3d 503, 509 (3d Cir. 2019). The information, including omissions, misstatements, and the rest of the information in the affidavit, are evaluated based upon the totality of the circumstances to determine whether there is "a fair probability that contraband of evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

The Government claims Mr. Aikens' assertions are "both legally and factually" insufficient because there were no identified "material omission[s] in the Affidavit that undercut[] the probable cause determination." [ECF No. 67, 17] However, there are

material omissions, misstatements, and misrepresentations made to the magistrate which directly undercut the probable cause determination.

Appended hereto as Exhibit A are videos which directly cut against the statements made by the Affiant in the search warrant, therefore more than sufficiently making a substantial preliminary showing as required by *Franks*. Moreover, there are two (2) audio recordings, appended hereto as Exhibit B, which when listened to, unequivocally show that the statements made by the Affiant were materially misrepresenting the truth of the matter.

Moreover, it is relevant to the Affidavit that the Affiant and the Government have attacked Mr. Aikens' qualifications, however, as evidence by Exhibit 33, appended hereto, Mr. Aikens is extremely qualified and has not only the technical skills, but the accomplishments which undercut statements made by the Government.

Additionally, the Government asserts that Mr. Aikens failed to "identify a lie" made to the Magistrate. Appended hereto are Exhibits 1 through 42, which are accompanied with Exhibit 46, which expressly describes each exhibit, therefore showing how each satisfies the requisite substantial preliminary showing.

## IN RE: MOTION TO DISMISS FOR SPOILATION OF EVIDENCE

Mr. Aikens previously filed a Motion to Dismiss for Spoilation of Evidence [ECF No. 63], asserting that the Government's failure to preserve digital evidence violated its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), Rule 16 of the Federal Rules of Criminal Procedure, and U.S. Magistrate Judge Maureen P. Kelly's Order. The Government, in its response, claims it "imaged as much ESD as forensically available," and provided a letter from HIS Computer Forensics Special agent David J. Coleman

claiming no ESD has been destroyed or rendered inaccessible, therefore "demonstrate[ing]that Mr. Aikens accusations are forensically baseless" [ECF No. 67, p.27]; however, these contentions are patently false, as described further below:

First, the Government's self-contradictory position regarding device access exposes fundamental investigative deficiencies. If agents properly executed seizure protocols, why are documented password lists ineffective? Standard for federal law enforcement "Students will conduct RAM capture analysis" https://www.fletc.gov/digital-forensics-examiner-program explicitly mandate RAM capture during seizure—a critical forensic step the government apparently neglected. This procedural failure directly prevents access to encrypted volumes, as login credentials and encryption keys represent distinct security layers in modern systems. The government's handling of mobile device evidence raises equally troubling questions.

While claiming to possess "no decryption capabilities," they somehow accessed Mr. Aikens' iPhone without explaining their methodology. The government's failure to document these critical forensic steps constitutes a material discovery violation. Even more concerning is the government's provision of compressed .zip files for the iPhone's rather than forensically sound .E01 disk images—the evidentiary gold standard NIST SP 800-86 digital evidence guidelines. For instance, the zip files for the iPhones refer to many texts messages from Mr. Aikens as "Local User" whilst the other person in the chat shows their own name. This deviation from established forensic protocols raises serious questions about evidence integrity and chain of custody.

Despite "examining" approximately **7,000,000 files** and **125,000 Google searches**, the government has failed to identify a single piece of incriminating evidence

thus far ESD to the defense. Instead, Mr. Aikens has uncovered substantial *Brady* material that the government failed to disclose or acknowledge. The government's representation that they "reviewed the discovery and turned over everything" directly contradicts their inexplicable delay in processing the original search warrant materials—materials they only addressed after this Court's specific inquiry in response to prior counsel's withdrawal when this court Inquired about Discovery, during such, Mr. Aikens even alerted the Court to the large amount of electronic seizure, prior counsel didn't alert this court nor did the Government about any encryption problems. Moreover, the government's determinations regarding "screenshots versus real product mockups" lack any credible forensic foundation. The HSI agent identified as their forensic specialist admits and presents no expertise with the software applications specifically mentioned in the indictment in his letter to the court. This critical knowledge gap renders the government's technical conclusions fundamentally unreliable. These compounding forensic deficiencies undermine the government's entire evidentiary foundation and constitute multiple material discovery violations requiring immediate remedy.

    Second, the Government's assertions regarding Mr. Aikens' encrypted drives contain fundamental factual errors and evidentiary gaps that require correction. The government erroneously characterizes certain drives as still accessible without explaining their forensic methodology or device handling procedures during seizure, or where such password lists or databases for passwords are located. The Government's representations in its omnibus response conspicuously omit critical information about how they accessed mobile devices, what specific procedures were used during device collection, and what attempts were made to properly preserve volatile memory contents.

Standard forensic practice requires RAM capture prior to device shutdown, as encryption keys remain accessible in active memory until system restart. In this matter, someone from the forensic team, turned it off.  The Government's failure to properly document RAM capture procedures directly caused any subsequent inability to access encrypted volumes unless they have again the database or passwords or volatile ram.

Third, The Government's claim that Mr. Aikens has been "provided access" to seized materials misrepresents the technical reality. Access to encrypted devices requires either proper forensic preservation of memory states during seizure or access to password repositories—neither of which the government has facilitated or produced despite seizing it. Mr. Aikens has never declined inspection opportunities; the devices simply cannot be accessed without forensic RAM dumps, password lists, or backup credentials stored at his office during seizure. The government's production of "100X summaries" constitutes a fundamentally deficient discovery response where charging documents by count have within and reference multiple distinct invoices for individual complainants. Moreover, the prosecution has unequivocally failed to review exculpatory ESD materials that would directly contradict their unsupported narrative regarding "quickly moving money"—characterizations wholly unsupported by comprehensive financial transaction records.

Fourth, all materials provided to defense counsel lack proper evidentiary tagging within the Magnet AXIOM forensic examination platform—a fundamental departure from established forensic protocols explicitly mandated in Magnet Forensics' authoritative technical documentation (https://www.magnetforensics.com/resources/getting-started-with-magnet-axiom-examine-tagging-and-reporting/). This methodological deficiency

transcends mere procedural irregularity and constitutes a fundamental departure from forensic best practices (*See Exhibit 43*)[1] that compromises the evidentiary integrity of the government's entire case. The government's forensic processing methodology systematically failed to properly preserve volatile memory contents through RAM dumping during device seizure—a fundamental investigative deficiency that precluded access to encryption keys temporarily stored in volatile memory. Furthermore, investigators failed to properly secure defendant's comprehensive password documentation stored on physical media, USB devices containing password database repositories, and all papers listing passwords. The government's assertion that defendant "could simply open his drives" fundamentally misunderstands encryption architecture, where devices maintain distinct authentication layers for initial login versus full-disk encryption— distinct credential sets documented in password repositories not properly secured during execution of search warrants and apparently the government doesn't know their whereabouts.

    The initial May 14, 2024 Electronic Service Discovery (ESD) production consisted exclusively of fabricated derivative files improperly labeled through subjective characterization by government agents rather than forensically sound objective categorization, effectively transforming unsubstantiated placeholders devoid of evidentiary context into purportedly dispositive evidence. Magnet Forensics' own technical documentation explicitly mandates comprehensive tagging protocols as integral to forensically sound evidence processing—protocols conspicuously absent from the

---

[1] Exhibit 43 is a list of Forensic Guides which detail best practices for the procurement, recovery, maintenance, custody, seizure, storage, and review of discovery, including specifically electronic discovery. Exhibits 43A-43F are copies of those guides.

government's evidentiary productions. This systematic departure from established forensic methodologies raises substantial questions regarding the integrity, reliability, and admissibility of electronic evidence forming the cornerstone of the government's case.

Fifth, it is of particular and grave concern that, as of this filing, no seized electronic devices have been properly imaged, analyzed, or subjected to the requisite forensic examination procedures mandated by established Department of Justice protocols and standard investigative practices. The Fourth Amendment's fundamental protections against unreasonable searches and seizures necessarily encompass temporal constraints upon governmental retention of seized electronic media. This constitutional principle requires prompt and diligent forensic examination following seizure to minimize intrusion upon privacy interests while preserving the integrity of relevant evidence.

While Rule 41 of the Federal Rules of Criminal Procedure establishes certain procedural frameworks for executing search warrants, the constitutional imperatives underlying these provisions demand reasonable diligence in the processing of seized materials, particularly when such materials may contain privileged communications or exculpatory evidence central to the preparation of a defense.

The government's unreasonable and significant delay of several months in initiating even basic forensic processing—only after this court inquired about the withdrawal of prior counsel and the status of discovery regarding the seized electronic devices—exceeds all reasonable timeframes set by relevant constitutional law and professional standards for proper search and seizure procedures.

The scan times for these devices are as follows:

- Scan 1 for the 28 e01 Images 5.14.2024 : 10/3/2024 at 2:58:59:040 PM

- Scan 2 for the 28 e01 Images 5.14.2024 : 10/15/2024 at 1:43:10:670 PM
- 2 iPhone Phones Scan time: 7/29/2024 at 12:06:17:745 PM

This deviation from established practice assumes heightened constitutional significance given the nature of the materials contained on these devices. Specifically, the seized electronic media almost certainly contain attorney-client privileged communications, constitutionally protected pre-indictment communications with counsel relating directly to the charged offenses, and exculpatory evidence that could fundamentally undermine the government's theory of prosecution. The Government's wholesale failure to initiate timely forensic examination has effectively eviscerated Mr. Aikens' ability to identify, preserve, and utilize potentially exculpatory electronic communications in preparation of his defense—creating substantial prejudice that directly contravenes his Sixth Amendment rights, and the fundamental principles articulated in *Brady* and its progeny. Mr. Aikens was informed by his previous counsel that the government was either in the process of accessing devices or had already done so. It wasn't until undersigned Counsel obtained the discovery materials toward the end of 2024 that Mr. Aikens became aware of the actual status of the discovery. Upon reviewing the materials in January, he communicated appropriately with his current counsel regarding spoliation, as the seized data was significantly less than what Mr. Aikens had.

This prejudice is not merely theoretical but concrete and irreparable, as critical electronic evidence continues to remain inaccessible to the defense despite its clear relevance to pending motions, trial preparation, and the development of affirmative defenses. The government's unjustifiable departure from fundamental forensic protocols

and disclosure obligations has created an asymmetry in access to evidence that undermines the adversarial process essential to our system of justice.

Regarding Special Agent David Coleman, his conduct caused the permanent spoliation of evidence.

The devices are not wholly encrypted with majorly bitlocker and the higher contained datasets are **_terabytes_**, multi-distinct encrypted containers and not bitlocker x 8; three distinct devices had actually been powered on in search warrant photos. "For Windows 10 devices that have BitLocker Device Encryption turned on (i.e. Microsoft Surface Pro devices), AXIOM Process will automatically try to recover a clear key from the Master Boot Record (MBR). If AXIOM Process finds a clear key in the MBR, it will then try to decrypt the device using that password. If AXIOM Process is unable to automatically decrypt the device, the user is prompted to provide known decryption credentials for the device."https://docs.magnetforensics.com/docs/axiom-cyber/html/Content/en-us/ acquire-computer/decrypting-evidence.html

As evidenced in Exhibits 34 through 37, appended hereto, documentation unequivocally demonstrates that the electronic devices in question were, at the time of unlawful seizure, in an operational state. The other devices in question were stored securely in an incredibly heavy safe, so large and robust that a skid steer was required to install it. This ensured there was never any concern that someone could simply break in and take it. These devices remained powered off while stored. However, without access to the seized passwords, the RAM dump, or the plaintext USB password database, the defense cannot retrieve the approximately 18 terabytes of data stored on those devices. The passwords are highly complex, and Mr. Aikens would only need to re-enter them

under specific circumstances, such as restarting his computer or during a power outage. Otherwise, he keeps his computers powered on at all times. In such cases, he would simply go to his office, retrieve the password from the safe, enter it, and return it to its secure location. This practice aligns fully with responsible encryption protocols, as even recommended by the FBI. https://www.fbi.gov/about/mission/lawful-access

For example, regarding the "Turned On Computer" left on the desk which contained a backup of the password repo as it was already logged in, the government should have had all passwords on the papers listing passwords, or the 1 USB device contained in the safe which had all passwords on it, or the Government should be able to review the RAM dump data to obtain credentials since the passwords listed on the paper, and other means "no longer work."

It is important to emphasize that Mr. Aikens has never, at any point, proposed, suggested, or asserted any theory involving remote data destruction protocols, "killswitch" mechanisms, or any other similar technological countermeasures designed to interfere with access to data. Such ideas are wholly speculative and bear no connection to the facts of this case or the arguments advanced by Mr. Aikens. These notions exist entirely outside the scope of his position and should not be misconstrued as part of his defense or strategy.

Furthermore, the introduction of such speculative concepts risks creating unnecessary confusion and misrepresentation of Mr. Aikens' intentions and actions. It is for this reason that Mr. Aikens deemed it essential to formally address and clarify this matter on the record and before the court. By doing so, he ensures that the proceedings

remain focused on the actual issues at hand rather than being derailed by baseless conjecture.

Second, Special Agent Coleman has demonstrably failed to adhere to federally established Digital Forensics protocols as promulgated by the Federal Law Enforcement Training Centers' Digital Forensics Examiner Program (formerly SCERS) and codified within the U.S. Department of Justice Office of Justice Programs' National Institute of Justice electronic crime scene investigation guidelines. Said guidelines explicitly mandate preservation of volatile Random Access Memory (RAM) data contemporaneous with device seizure, specifically cautioning investigators to "seek immediate assistance" when confronted with powered-on devices requiring specialized shutdown procedures to preserve evidentiary integrity.

Furthermore, as delineated on page 6 of the U.S. Department of Justice Office of Justice Programs' solicitation regarding Electronic Crime and Digital Evidence Recovery, which explicitly articulates the criticality of "forensically captur[ing], log[ging] and retain[ing] volatile data, including information and data related to active applications, processes, and data resident in Random Access Memory (RAM) from running computers prior to shut down when devices are seized as evidence," and the necessity for "tools to carve investigation-relevant data and information from RAM, active applications and processes captured PRIOR to powering off computers seized as evidence."

The Government's inherently contradictory position vis-à-vis device accessibility fundamentally undermines the integrity of their investigative methodology. If seizure protocols were properly executed in accordance with established federal guidelines, the ineffectiveness of documented password repositories remains inexplicable. As explicitly

specified in FLETC's Digital Forensics Examiner Program curriculum (https://www.fletc.gov/digital-forensics-examiner-program), which unequivocally states that "Students will conduct RAM capture analysis," RAM preservation constitutes a non-discretionary forensic procedure that the Government has manifestly neglected to perform. This procedural deficiency directly precludes access to potentially encrypted volumes, as contemporary digital security architecture implements authentication credentials and encryption key management as discrete security protocols operating independently within modern computing systems.

Third, Mr. Aikens believes and therefore avers that Special Agent Coleman's evidentiary assertion fundamentally misrepresents established technological facts, as iPhone devices incorporate encryption methodologies as a standard security feature pursuant to manufacturer specifications. This incontrovertible technological reality raises critical evidentiary questions that remain unaddressed despite Mr. Aikens' inquiry:

1. *Did investigating personnel utilize authentication credentials from the aforementioned password repository documentation to facilitate device access?;*
2. *Alternatively, did forensic personnel employ technological circumvention methodologies to bypass said encryption?; and*
3. *If so, what specific forensic tools were employed, and were appropriate chain-of-custody protocols followed during such procedures?*

Mr. Aikens notes with significant concern that the Assistant United States Attorney has declined to respond to this matter in their response. This calculated non-responsiveness severely prejudices Mr. Aiken's ability to mount an effective challenge to

the Government's evidence acquisition protocols and undermines fundamental principles of procedural due process and representations to this court of encrypted versus non encrypted device statuses.

Fourth, the Government asserts that encrypted drives remain "accessible with the appropriate decryption keys," which is both technically and legally flawed. Modern encryption algorithms like AES-256, with proper implementation, create a computational impossibility scenario, not merely a practical difficulty. The statement mischaracterizes the fundamental nature of cryptographic inaccessibility and is factually flawed for the following reasons:

(1) **Information-Theoretic Security**: Without the decryption key, the data exists only in an information-theoretically scrambled state. This isn't merely locked content, but mathematically transformed content whose original form cannot be derived without the exact key.

(2) **Computational Infeasibility**: Brute-forcing modern encryption would require computational resources exceeding those of the entire global computing infrastructure for time periods potentially exceeding the age of the universe.

(3) **Memory Limitations**: If no RAM dumps were performed during system operation, volatile key material stored in memory has been permanently lost due to the physical properties of DRAM cells, which lose their state when power is removed.

The statement is legally flawed for the following reasons:

(1) <u>Evidence Unavailability Doctrine</u>: Under *United States v. Zubulake*, 220 F.R.D. 212 (S.D.N.Y. 2003) and its progeny, evidence that cannot be produced after

reasonable efforts can be considered legally unavailable. The government's position ignores the legal distinction between theoretical and practical availability.

(2) <u>Compelled Decryption</u> Jurisprudence: Per *In re Grand Jury Subpoena Duces Tecum* Dated March 25, 2011, 670 F.3d 1335 (11th Cir. 2012), encrypted data without available keys represents a "foregone conclusion" obstacle, where the existence of the data becomes legally indistinguishable from its accessibility.

(3) <u>Fifth Amendment Implications</u>: The Supreme Court in *Fisher v. United States*, 425 U.S. 391 (1976), established that compelling production of evidence requires the government to demonstrate with "reasonable particularity" what documents exist. When encryption renders data inaccessible, this standard cannot be met.

(4) <u>Best Evidence Rule Implications</u>: Under *Federal Rule of Evidence 1002*, the "original" document requirement must account for technological reality. Digital evidence must be practically accessible to satisfy this rule.

(5) <u>Scientific Impossibility Doctrine</u>: The doctrine of impossibility applies when compliance with legal requirements is scientifically impossible A party invoking impossibility must prove the following: (1) a contingency has occurred; (2) performance must be impossible

(6) <u>Evidentiary Standard</u>: The government's claim fails to meet the *Daubert* standard under *Federal Rule of Evidence 702*, as it makes assertions about data accessibility that contradict the scientific consensus regarding computational cryptography. Their position represents an invalid application of

computer forensic principles and mischaracterizes the nature of encrypted data. The government's characterization implies a false equivalence between potential accessibility and actual accessibility, thereby shifting an impossible burden to the defense and undermining fundamental due process protections codified in *Brady v. Maryland*, 373 U.S. 83 (1963).

Finally, appended hereto as Exhibit 44 is a list which references other Exhibits which are appended hereto, and further show a spoliation of evidence that is not just present, but significant and wide-reaching.

For all of the foregoing reasons, the Government has failed to adhere to its requirements under *Brady* and has spoliated evidence to an extent which has significantly and irreparably prejudiced Mr. Aikens.

**WHEREFORE**, Mr. Seth Aikens, respectfully moves for an Order from this Honorable Court GRANTING the relief sought herein.

Respectfully Submitted,

*/s/ Frank C. Walker II*
Frank C. Walker II

PA I.D. No. 94840
WV I.D. No. 11853

FrankWalkerLaw
3000 N. Lewis Run Road
Clairton, PA 15025
412.405.8556 Office
412.202.9193 Fax

Date:  April 3, 2025                          Counsel for Seth Aikens